NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOAS INC., a New Jersey Corporation,<br><br>  Plaintiff<br><br>v.<br><br>VISTA CAPITAL, LLC (d/b/a BanCardXpress; ETHAN PARK, an individual, EDUARDO PARK, and individual, XYZ CORPS 1-10 (fictitious); and JOHN/JANE DOES 1-10 (fictitious),<br><br>  Defendants. | Civil Action No. 17-12436 (JLL) (JAD)<br><br>**OPINION ON DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendants Vista Capital, LLC and Ethan Parks' Motion to Disqualify Counsel. (ECF No. 25). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on this issue. After having carefully considered the parties' submissions, and for the reasons stated below, Defendants' Motion is **DENIED**.

## I.  RELEVANT BACKGROUND

In this action, Plaintiff Innoas, Inc. alleges that its former employee, Defendant Eduardo Park, resigned from Innoas and immediately took a job with a direct competitor, Defendant Vista Capital, LLC, in violation of certain provisions of Park's employment agreement. (Compl., ¶¶ 33-34, ECF No. 1). Plaintiff further alleges that Park, who had essentially unfettered access to its sensitive business information during his employment, stole certain of that information, either by copying it before his departure, or by hacking Plaintiff's systems thereafter in concert with the

other Defendants. (See generally id.). Contending that Defendants have used that stolen business information to obtain an unfair competitive advantage, Plaintiff has asserted multiple causes of action against Eduardo Park, Vista Capital, and its principle, Ethan Park, seeking both monetary and injunctive relief. (Id. at 13-27).[1]

On August 16, 2018, Defendants Ethan Park and Vista Capital filed a motion requesting that the Court disqualify Plaintiff's counsel, Kim, Cho & Lim, LLC, from participating in this action. (ECF No. 25). Defendants contend that, as two of the firm's attorneys previously represented Defendant Ethan Park in a similar litigation, the firm's involvement in this case, in which it is materially adverse to Mr. Park's interests, violates Rule of Professional Conduct 1.9(a). (See generally Def. Br., ECF No. 25-4). Plaintiff filed an opposition on September 6, 2018. (ECF No. 27). Defendants did not file a reply.

## II.  LEGAL DISCUSSION

### a.  Disqualification - Generally

"The Court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. Nasdaq, Inc. v. Miami Int'l Holdings, Inc., No. 17-6664 (BRM), 2018 U.S. Dist. LEXIS 151813, at *6 (D.N.J. Sep. 6, 2018) (citing United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980)). The United States Court of Appeals for the Third Circuit has noted that "disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case." Miller, 624 F.2d at 1201. The Court of Appeals cautioned, however, that disqualification is "never . . . automatic." Id. To that end, a "court should disqualify an attorney only when it determines, on the facts of the particular

---

[1] Because Plaintiff starts each individual count with paragraph "1", the Court must cite to page numbers when referring to Plaintiff's causes of action.

2

case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Id. In conducting its analysis, a court should consider "the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Id. Courts must also remain mindful that resolving a motion for disqualification requires a careful balancing of competing interests, "'weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel.'" See United States ex rel. Bahsen v. Boston Sci. Neuromodulation Corp., No. 11-1210 (MCA), 2015 U.S. Dist. LEXIS 160030 (D.N.J. Nov. 30, 2015) (quoting City of Atl. City v. Trupos, 201 N.J. 447, 992 A.2d 762, 771 (N.J. 2010)).

In this District, the Rules of Professional Conduct ("RPC") govern the actions of counsel. Local Civil Rule 103.1(a) provides, in pertinent part, that "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in the [District]." New Jersey state courts are therefore regarded as a "primary authority" on the interpretation and application of the RPC. Strategic Envtl. Partners, LLC v. Bucco, No. 13-5032, 2014 U.S. Dist. LEXIS 159483, *5-6 (D.N.J. Nov. 12, 2014) (citing Steel v. GMC, 912 F. Supp. 724, 732 (D.N.J. 1995)). While Local Civil Rule 103.1(a) specifies that both the RPC and the New Jersey Supreme Court's construction of those Rules must be "modif[ied] as may be required or permitted by Federal statute, regulation, court rule or decision of law", no party contends that such a modification would be necessary or appropriate in this case. (See generally Def.. Br., ECF No. 25-4; Pl. Br., ECF No. 27).

Under New Jersey law, "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly." Cavallaro v. Jamco Prop. Mgmt., 760 A.2d 353, 361 (N.J. Super. Ct. App. Div. 2000). Thus, the party seeking disqualification bears the burden of establishing that

3

disqualification would be appropriate. Id. Moreover, motions to disqualify are "viewed with 'disfavor' and disqualification is considered a 'drastic measure, which courts should hesitate to impose except when absolutely necessary.'" Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1114 (D.N.J. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)).

### b. Defendants Have Not Established that Plaintiff's Counsel's Involvement in this Case Violates RPC 1.9

Defendants contend that, by virtue of Kim, Cho & Lim, LLC's lawyers' previous representation of Defendant Ethan Park in similar litigation, the law firm is violating RPC 1.9(a) by serving as Plaintiff's counsel in this matter. (See Def. Br. at 5-7, ECF No. 25-4).[2] The Court must therefore examine the requirements of that Rule in light of the circumstances of this case.

RPC 1.9(a) provides: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." On its face, that Rule requires to Court to determine: (1) whether the lawyer previously represented a client; (2) whether that lawyer now represents a different client in the same matter or a "substantially related" matter; (3) whether the new client's interests are "materially adverse" to the interests of the former client; and, if all of the foregoing have been answered in the affirmative, (4) whether the former client has knowingly consented, in writing, to the lawyer representing the new client.

In Trupos, the New Jersey Supreme Court noted that the burden of production will shift during adjudication of a motion to disqualify counsel for an alleged violation of RPC 1.9(a). The

---

[2] Though Defendants do not address the issue in their brief, it would appear that if Attorneys Lim or Cho are found to violate RPC 1.9 with regard to this action, that conflict would apply to the entire Kim, Cho & Lim firm pursuant to RPC 1.10.

4

Trupos Court noted that "the initial burden of production – that the lawyers for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former party – must be borne by the party seeking disqualification." 992 A.2d at 771. "If that burden of production or of going-forward is met, the burden shifts to the attorneys sought to be disqualified to demonstrate that the matter or matters in which . . . they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." Id. The Trupos Court was careful to clarify, however, that notwithstanding that shifting burden of production, "the burden of persuasion on all elements under RPC 1.9(a) remains with the moving party, as it 'bears the burden of proving that disqualification is justified.'" Id. (internal citation omitted).

While it is clear that Plaintiff's claims in this litigation are materially adverse to Defendant Ethan Park, this Court is not satisfied that Mr. Park has met his initial burden of establishing a past attorney-client relationship.[3] It remains unclear whether Attorneys Joshua Lim and Celina Cho represented Mr. Park himself in the previous litigation in question, as opposed to entities that Mr. Park owned or controlled, and the relevant portions of Mr. Park's submission provide contradictory information. For instance, Mr. Park certified that Attorneys Lim and Cho "represented [him] and [his] financial services companies" for several years while those attorneys were associated with the Fahy & Choi firm. (Cert. of Ethan Park ¶¶ 2-3, ECF No. 25-1). Mr. Park further stated that Lim and Cho worked on "litigation, contracts, and general business maters", and referred to billing records from Fahy & Choi to support that contention. (Id. ¶ 3). Those billing records are annexed to the Certification of Benjamin B. Choi, a former partner in the Fahy & Choi firm. (Cert. of

---

[3] Defendants do not suggest that Plaintiff's counsel previously represented Defendant Vista Capital, LLC or any predecessor-in-interest. (See generally Def. Br., ECF No. 25-4). The Court has therefore limited its analysis to Mr. Park.

Benjamin B. Choi, ¶¶ 2, 6, Ex. A, ECF No. 25-3). In describing the relevant attorney-client relationships, however, Mr. Choi certified that Fahy Choi "served as attorneys for Nextran, Money Marketing and other associated entities", while noting that Mr. Park had an ownership interest in those entities. (Id. ¶¶ 2-3). Mr. Choi did not suggest that Fahy Choi also represented Mr. Park in his individual capacity. (Id.). Similarly, Attorneys Lim and Cho have both represented that they worked on behalf of Nextran Group Inc. and Money Marketing, Inc. during their time at Fahy Choi. (Decl. of Joshua Lim ¶ 5, ECF No. 27-1; Decl of Celina Cho ¶ 4, ECF No. 27-2). Moreover, the billing invoices themselves do not support Mr. Park's position. Fahy Choi sent every invoice to Nextran and labeled each "In Reference To: Nextran Litigation Matters", "In Reference To: Nextran General File – Flat Fee Arrangement", "In Reference To: Nextran Monthly Retainer" or "In Reference To: Nextran General." (See generally Cert. of Benjamin B. Choi, Ex. A, ECF No. 25-3). While certain of Fahy Choi's billing entries appear to reference pieces of litigation, (id.), it is unclear if Mr. Park was a party to any of those suits in his personal capacity.

The distinction is meaningful, given RPC 1.13(a)'s guidance that, subject to certain exceptions inapplicable in this matter, "[a] lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholder or other constituents." While a lawyer may represent both an organization and its owners, see RPC 1.13(e), it is unclear whether that was the case here. Defendants have not provided enough information for the Court to make a determination on this point. While Plaintiff specifically discussed the RPC 1.13(a) issue in its opposition, (Pl. Br. at 11-12, ECF No. 27),[4]

---

[4] Attorney Lim explicitly stated that he has not previously represented any of the Defendants in this case. (Decl. of Joshua Lim, ¶¶ 3, 5, ECF No. 27-1). While, in addition to her work on the Nextran file, Attorney Cho recalls having a "brief conversation" with Defendant Ethan Park regarding a "citizenship matter", she represents: "that brief conversation was the extent of my assistance to or representation of [Ethan] Park. Otherwise, he was never my client, and I did not

6

Defendants did not file a reply, leaving that point unaddressed. As Defendants have not established a previous attorney-client relationship, the Court would be constrained to deny their application on this ground alone.

Even if the Court were to assume that Attorneys Lim and Cho previously represented Ethan Park in connection with the Nextran litigation, Defendants' application would still be deficient. RPC 1.9(a) only prohibits a lawyer from taking on a representation that is the same or "substantially related" to a matter in which the lawyer represented a former client. The record does not reflect that the Nextran litigation matters are substantially related to the current case.

In Trupos, the New Jersey Supreme Court considered various jurisdictions' interpretations of RPC 1.9(a)'s "substantially related" language, 992 A.2d at 773-74, and "distil[led]" those approaches to create the following "workable standard":

> [F]or purposes of RPC 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

Id. at 774. In describing the rationale behind its formulation, the Trupos Court wrote "[w]e adopt that standard because it protects otherwise privileged communications, see RPC 1.6(a) (proscribing revelation of 'information relating to representation of a client'), while also requiring a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a former client." Id. (citation in original). As noted above, Attorneys Lim and Cho bear the burden of production in demonstrating "that the

---

represent him personally." (Decl. of Celina Cho, ¶ 10, ECF No. 27-2). To the extent Attorney Cho formed an attorney-client relationship with Mr. Park by virtue of that conversation, Defendants do not argue that her advice regarding citizenship issues is "substantially related" to this case. Indeed, it is clearly not. The Court will, therefore, not consider it further.

7

matter or matters in which . . . they represented [Ethan Park] are not the same or substantially related to the controversy in which the disqualification motion is brought." Trupos, 992 A.2d 771. This Court finds that they have done so and will address both prongs of the Trupos Court's "substantially related" test in turn.

First, this case may be "substantially related' to the Nextran litigation if, while representing Ethan Park in those matters, Attorneys Lim and/or Cho "received confidential information from [Mr. Park] that can be used against [him] in [this case]." Id. at 774. The Court finds that Lim and Cho have satisfied their "burden of production" on this point, as they have both submitted declarations in which they disclaim ever having received such information. (Decl. of Joshua Lim ¶¶ 6-7, ECF No. 27-1 (stating that Lim did not obtain any confidential information about Ethan Park either during Lim's work on the Nextran litigation or otherwise); Decl. of Celina Cho ¶¶ 4-7 (stating that, while she attended certain meetings that included Mr. Park, she did not learn any confidential information about him)). Mr. Park represents that Attorney Lim learned certain confidential information about him while working on the Nextran litigation. (Cert. of Ethan Park ¶¶ 22-26, ECF No. 25-1). Specifically, Mr. Park contends that, by virtue of that prior representation, Attorney Lim learned about: (1) Mr. Park's "emotional weakness" in connection with testifying, whether during a deposition or at trial; (2) Mr. Park's strategy for defending/settling certain cases based on the potential exposure involved; and (3) Mr. Park's aversion to cases involving accusations of fraud, as Mr. Park lost a previous company in connection with similar allegations in the Nextran litigation. (Id.). Mr. Park believes that Attorney Lim is using that information against him in this case. (Id. ¶ 22). Mr. Park does not suggest that Attorney Cho ever obtained any such confidential information. (See generally Cert. of Ethan Park, ECF No. 25-1). Attorney Lim expressly denies having learned the about Mr. Park's settlement

strategy (he does not recall being involved in any settlement negotiations or even discussing settlement strategy, and disputes ever learning about Mr. Park's specific settlement thresholds), aversion to testifying (he was not involved in any depositions or trial in the Nextran litigation, and Mr. Park never otherwise told him about any "emotional weakness"), or fear of losing any company. (Decl. of Joshua Lim ¶¶ 11-15, ECF No. 27-1).

The Court finds that Mr. Park, who ultimately bears the burden of establishing the propriety of disqualification, has not sufficiently established that he conveyed confidential information to Attorney Lim. First, the Court notes that while Mr. Park certified that Attorney Lim obtained very specific, confidential information, including precise thresholds for settlement, he did not explain how. Mr. Park's Certification speaks only in generalizations, vaguely stating that Attorney Lim "learned" or "knows" such details through his work on the Nextran litigation. (See Cert. of Ethan Park ¶¶ 22-25, ECF No. 25-1). Mr. Park has not certified that he personally shared that information with Attorney Lim and has not otherwise explained the basis for his statements regarding Lim's knowledge. (See generally id.). Though Lim explicitly disclaimed such knowledge as part of Plaintiff's opposition and explained that he was never in a position to obtain it, (see generally Decl. of Joshua Lim, ECF No. 27-1), Defendants never rebutted those representations in a reply. Mr. Park's statements, therefore, appear to be based on his own supposition. That is not a sufficient basis for disqualification. See Trupos, 992 A.2d at 775 ("[T]here is no proof of any settlement tactics or strategy being shared with the law firm and, because the 'appearance of impropriety' standard no longer has any vibrancy when gauging the propriety of attorney conduct, surmise alone cannot support an order of disqualification.") (emphasis added).[5] Second, to the extent the

---

[5] The Court must address Defendants' argument that Attorney Lim's statement that he "learned a lot from the Korean Italian brothers" (i.e., Defendant Ethan Park and his brother, non-party Tony Park) reflects that Lim "has learned how Ethan Park will react to false accusations of criminal

information at issue was ever confidential, that is certainly no longer the case. By publicly filing that information, without redaction, Mr. Park has voluntarily disclosed it to the entire world. Defendants have not provided the Court with any authority suggesting that disqualification might be appropriate in these circumstances. Indeed, disqualifying an attorney because he or she might be able to use now-public information does not achieve "the ends that the disciplinary rule is designed to serve." Miller, 624 F.2d at 1201. The Court must therefore move on to the Trupos Court's alternative basis for determining whether the cases are "substantially related."

Under the second Trupos prong, this matter may be deemed "substantially related" to the Nextran cases if "facts relevant to the prior representation are both relevant and material to the subsequent representation." Id. at 774. In making this determination, the Court must conduct a "fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney may act adverse to a former client." Id. Plaintiff has satisfied its initial burden of production by describing how only "vague similarities" link this case to the Nextran litigation. (See Pl. Br. at 13-16, ECF No. 27) While Mr. Park represents that "this litigation alleging computer fraud/criminal conduct is very similar to [the Nextran litigation]", (Cert. of Ethan Park ¶¶ 12, 15), he does not explain how, other than to note that "[t]he charges in the [Nextran] case, like this case, were proven to be false", (id. at ¶ 16), and that Nextran "was also in the business of providing point of sale merchant services." (Id. ¶18). Defendants have not provided an adequate description of the Nextran litigation (e.g., the timeframe, parties, claims, and legal theories involved, the allegedly wrongful actions at issue, etc.), let alone demonstrated the

---

activity . . ." or otherwise received Park's confidential information. (Def. Br. at 5, ECF No. 25-4). Based on Defendants' own submissions, Attorney Lim allegedly made that statement when defense counsel in this case asked Lim how he knew so much about a particular area of law. (Cert. of Stacy Yoon ¶¶ 4-6, ECF No. 25-2). In using that statement, out of context, as proof that Attorney Lim also learned confidential information about Ethan Park, Defendants misrepresent the record.

sort of factual overlap that might justify disqualification. Indeed, based on the current record, the Court finds that this case is only "similar" to the Nextran matter in that both involve allegations of fraud or other wrongdoing in the same industry. Defendants have therefore failed to carry their ultimate burden of establishing that this matter has a "congruity of facts" with the Nextran litigation.

In sum, as the motion record does not support a finding that Attorneys Lim or Cho represented Defendants in connection with the Nextran litigation, or that the Nextran litigation is "substantially related" to this case, the Court finds that Defendants have not established that Kim, Cho & Lim, LLC's role in this case runs afoul of RPC 1.9(a). The Court will, therefore, **DENY** Defendants' motion to disqualify.

### III. CONCLUSION

Based on the foregoing findings, Defendants' Motion to Disqualify Counsel, (ECF No. 25), is **DENIED**. An Order consistent with the terms of this Opinion will follow.

*[signature]* 1/22/19
JOSEPH A. DICKSON, U.S.M.J.

Cc: Hon. Jose L. Linares, Chief Judge